**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 18-18-DLB-CJS

UNITED STATES OF AMERICA                                                                      PLAINTIFF

v.                              MEMORANDUM OPINION AND ORDER

$10,493 IN UNITED STATES CURRENCY                                                       DEFENDANT

\*\* \*\* \*\* \*\* \*\*

## I.    INTRODUCTION

This *in rem* civil forfeiture matter is before the Court on Paintiff's Motion for Summary Judgment (Doc. # 12), seeking to have the claim filed by Claimant Paul Dones stricken, and this action dismissed. The motion is fully briefed (Docs. # 14 and 15) and ripe for review. For the reasons stated herein, the Motion for Summary Judgment is **granted**, and this action is **stricken from the Court's docket**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a seizure of money that took place at the Cincinnati/Northern Kentucky International Airport ("CVG") on September 1, 2017. (Doc. # 1 at 1). On that day, Kyle Dones ("Kyle") was flying from Chicago to San Francisco and connecting through CVG. (Doc. # 1-2 at 2). Kyle had purchased a one-way ticket the day before. *Id.* The characteristics of the ticket purchase, as well as Kyle's prior criminal history (two arrests for trafficking marijuana and a felony firearm charge) and his destination in a "known source city/state" aroused suspicion. *Id.*

1

As a result, Drug Enforcement Administration (DEA) Task Force Officer (TFO) Richard C. Bernecker, TFO Bill Conrad, and CVG Airport Police Department Detective Ken Coyle went to the departure gate for the flight to San Francisco. *Id.* at 1-2. Detective Coyle identified Kyle as tickets were scanned. *Id.* at 2. TFO Bernecker approached Kyle, and Kyle agreed to speak with law enforcement. *Id.* TFO Bernecker asked Kyle if he was carrying large quantities of money, drugs, or other contraband. *Id.* at 2-3. Kyle indicated that he was not carrying any such items, but, according to TFO Bernecker's affidavit, looked nervous during the encounter. *Id.* at 3. When asked about his trip, Kyle informed TFO Bernecker that he was going to San Francisco for work. *Id.*

Kyle then gave TFO Bernecker permission to search him and his bags. *Id.* The search turned up two cell phones, as well as stacks of U.S. currency which lined the walls of Kyle's suitcase. *Id.* When asked by TFO Bernecker how much money Kyle had and why Kyle denied having a large quantity of currency, Kyle responded that he was carrying $9000 to buy a car in San Francisco. *Id.* TFO Bernecker reminded Kyle he stated earlier that he was going to San Francisco for work, and Kyle then replied he was going to purchase a 2005 Mercedes Benz but had no proof of purchase. *Id.*

When asked about where the money came from, Kyle stated he was a professional musician, but Kyle provided no proof of such employment. *Id.* Kyle also told TFO Bernecker that he had not paid taxes that year, and the money was a loan from his grandmother. *Id.* at 3-4. Kyle refused to provide TFO Bernecker with his grandmother's phone number to confirm his story. *Id.* at 4.

TFO Bernecker then asked Kyle for permission to search his cell phone. *Id.* Kyle would not give such permission, and TFO Bernecker claims Kyle "attempted to erase

something from his cell phone" before it was seized. *Id.* Kyle denied ever being arrested for something connected to narcotics, and then refused to answer further questions and requested his lawyer. *Id.*

Following Kyle's conversation with TFO Bernecker, TFO Bernecker informed Kyle that the currency would be seized "based on probable cause that it was proceeds of drug-related activities." *Id.* The currency totaled $10,493.00. *Id.*

On October 5, 2017, Kyle filed a Seized Asset Claim form with the DEA. (Docs. # 12 at 1 and 15-2). This claim, however, was found to be deficient. (Doc. # 12 at 1). On November 9, 2017, Paul and Renee Dones, Kyle's parents, filed the same claim form seeking return of the money through the DEA's administrative forfeiture proceedings and claiming that the seized money was a loan they provided Kyle to purchase a car. (Docs. # 8-1, 12 at 1 and 15-1).

On February 2, 2018, the United States filed this *in rem* action in federal court pursuant to 21 U.S.C. § 881(a)(6) claiming the asset was proceeds of drug trafficking. (Docs. # 1 and 1-3). An *in rem* warrant was sought and issued on the same day for the proceeds. (Docs. # 2 and 5). On March 12, Paul Dones ("Claimant Dones" or "Claimant") filed a Verified Claim in federal court claiming that the seized money was not "proceeds of any drug transactions," but instead was a loan to Kyle from his parents "for the purpose of purchasing a custom automobile while in California." (Doc. # 8-1 at 1). Claimant also filed an Answer to the United States' Verified Complaint claiming the money was "obtained legally, and its intended use was for a lawful purpose" and that the Verified Complaint was insufficient to show an illegal purpose. (Doc. # 10 at 1).

3

On May 2, 2018 the United States filed a Motion for Summary Judgment arguing Claimant does not have standing to claim the money he allegedly loaned to Kyle. (Doc. # 12). Claimant filed a Response on May 16, 2018 asserting the Court could find he had standing, and the United States replied on May 30, 2018. (Docs. # 14 and 15). The Motion is ripe for the Court's review.

## III. ANALYSIS

### A. Standard of Review

This motion, styled as a Motion for Summary Judgment on the Pleadings, and which includes supplemental evidence beyond the pleadings, will be construed as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56.[1] Under Rule 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In making this determination, the Court must look at the evidence "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-252 (1986).

The Sixth Circuit has made clear that the non-moving party must put forth evidence which shows a genuine issue of material fact and may not rely solely on conclusory

---

[1] Federal Rule of Civil Procedure 12(d) states that in a Motion for Judgment on the Pleadings, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In this case, documents not referenced by or incorporated into the pleadings are being presented to the Court. S*ee e.g.* (Docs. # 12-1, 15-1 and 15-2). Therefore, based on a plain reading of Rule 12(d), this motion must be construed as a Motion for Summary Judgment.

assertions. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "The party opposing a motion for summary judgment may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with the proper evidence in order to defeat the motion." *Id.* (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). The *Alexander* court held that failing to put forth evidence in opposition to a motion for summary judgment is sufficient grounds for granting the motion. *Id.* Such evidence can take the form of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).

In this case, Plaintiff moves for summary judgment pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") G(8)(c)(i)(B) which allows the government to move "to strike a claim or answer … because the claimant lacks standing." Supp. Fed. R. Civ. P. G(8)(c)(i)(B). Such a motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. Fed. R. Civ. P. G(8)(c)(ii)(B).

### B. Claimant Dones does not have standing to contest the forfeiture so summary judgment must be granted in favor of the United States.

The rules governing civil *in rem* forfeiture appear in two places—the Supplemental Rules, specifically Rule G, and 18 U.S.C. § 983. *See United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 347 (6th Cir. 2017). In order to contest civil forfeiture, one must meet both the Article III standing requirements as well as statutory standing. *Id.* at 348-49. Courts have held that Article III standing generally requires a showing of (1) concrete

5

and particularized injury, (2) a causal connection between the injury and the complained-of conduct, and (3) redressability of the injury by a favorable decision from the Court. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). In the context of civil forfeiture, the Sixth Circuit has found that "a claimant must have a colorable ownership, possessory, or security interest in at least a portion of the seized property." *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998).

Claimants must also satisfy the statutory standing requirements of Supplemental Rule G, which states that a claim to the property "must (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated [under the Rules]." Supp. Fed. R. Civ. P. G(5)(a)(i). Supplemental Rule G standing requirements are "satisfied through mere compliance with the rule." *$31,000.00 in U.S. Currency*, 872 F.3d at 350-51.

When determining Article III standing in forfeiture cases, the Sixth Circuit has "declined 'to adopt any type of hard-and-fast requirement for the initial evidentiary showing necessary for standing,'" *United States v. Real Prop. Located at 4527-4535 Mich. Ave., Detroit, Mich. (Real Prop.)*, 489 F. App'x. 855, 857 (6th Cir. 2012) (quoting *$515.060.42 in U.S. Currency*, 152 F.3d at 497), and "generally…look[s] to 'the law of the jurisdiction that created the property right to determine the petitioner's legal interest." *Real Prop.*, 489 F. App'x. at 857 (quoting *United States v. Salti*, 579 F.3d 656, 668 (6th Cir. 2009)). Such an inquiry into Kentucky property rights, however, is unnecessary in this case as courts throughout the country have consistently held that general, unsecured creditors have no standing to contest forfeiture of assets of their debtors. *See, e.g.*,

*United States v. One-Sixth Share of James J. Bulger in all Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003); *United States v. $20,193.39 United States Currency*, 16 F.3d 344, 346 (9th Cir. 1994); *United States v. Singleton*, No. 5:13-cr-008-KKC, 2014 WL 3657632, at *1 (E.D. Ky. July 23, 2014); *United States v. 38,852.00 in United States Currency*, 328 F. Supp. 2d 768, 769 (N.D. Ohio 2004); *United States v. One 1965 Cessna 320C Twin Engine Airplane, Serial # 0813841-1, License No. N3062T*, 715 F. Supp. 808, 812 (E.D. Ky. 1989).

Courts reach this conclusion by reasoning that "general creditors cannot claim an interest in any particular asset that makes up the debtor's estate." *$20,193.39 U.S. Currency*, 16 F.3d at 346. *See also United States. v. Campos*, 859 F.2d 1233, 1239 (6th Cir. 1988) (quoting *United States v. Reckmeyer*, 836 F.2d 200, 206 n.3 (4th Cir. 1987) ("the failure of general creditors to prevail in civil forfeiture actions has not turned on their inability to demonstrate a protectable interest in the property of the person whose conduct led to the forfeiture but rather on their inability to demonstrate that their interest lay in the *specific* asset being forfeited")). This approach is logical—by definition, an unsecured creditor has no interest in any *specific* asset of the debtor, including a forfeited asset—and the Court sees no reason to deviate from this approach. *See Reckmeyer*, 836 F.2d at 206 n.3. Claimant Dones does not dispute that this is the law; rather, he disputes that he is a general, unsecured creditor. *See* (Doc. # 14 at 3-4).

There are no facts presented by the Claimant, however, that suggest he is anything other than an unsecured creditor. Claimant Dones asserts he provided money to his son Kyle to purchase a car but makes no mention of securing collateral for the loan or taking a security interest in any of Kyle's specific property. (Docs. # 8-1, 10 and 14 at 2-4). As

7

Claimant has failed to provide sufficient allegations—let alone evidence—to counter the assertion that he is an unsecured creditor, summary judgment will be entered on this ground. See *Alexander*, 576 F.3d at 558.

Claimant Dones, however, disputes the conclusion that he is a creditor at all. (Doc. # 14 at 3). Claimant claims in the Opposition for Motion for Summary Judgment that there is no creditor/debtor relationship between him and Kyle, but rather "this is more properly characterized as a bailment situation" or this could be construed as a constructive trust. *Id.* Claimant, however, has not raised a genuine issue of material fact through these conclusory assertions. Claimant has presented no evidence to suggest that "the money was to be used for the specific purpose of purchasing a car…*after which it would be returned*" or that the money "was *subject to being returned* as *requested* or *demanded* by Paul Dones." *Id.* (emphasis added). Presentation of evidence to support either theory may have led the Court to a different outcome. But, as the Sixth Circuit has made clear, "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment," and therefore these unsupported statements are not sufficient to prevent the Court from finding summary judgment to be appropriate. *Alexander*, 576 F.3d at 560. See also, *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004).

The Court also finds that there is no genuine issue of material fact whether the asset is a loan because the Claimant admitted in his Verified Claim that the asset in question was a loan so Kyle could purchase a car. (Doc. # 8-1). Additionally, in both Kyle and Claimant's Seized Asset Claim Forms, the asset is described as a loan from Paul and Renee Dones to Kyle. (Docs. # 15-1 and 15-2). At no point before asserting it

8

in his Response to the Motion for Summary Judgment did the Claimant describe the asset transfer in terms that would suggest the presence of a bailment or constructive trust. As the Claimant has acknowledged that the transfer was a loan, the Court sees no reason to treat it as anything else. Because the Claimant is an unsecured creditor in relation to this loan, the Court concludes Claimant has no standing to contest the forfeiture.[2]

Therefore, for the reasons articulated herein, and the Court being otherwise fully and sufficiently advised, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion for Summary Judgment (Doc. # 12) is **GRANTED**;

(2) This case is **DISMISSED** and **STRICKEN** from the Court's docket; and

(3) The Court will enter a judgment contemporaneously with this Order.

This 22nd day of October, 2018.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Cov2018\18-18 Order on MSJ.docx

---

[2] A liberal reading of Claimant Dones's Answer could construe the second defense as an assertion of the "innocent owner defense," but this does not help his case either. (Doc. # 10). Claimant's statement that the money seized "was obtained legally" and "was [intended to be used] for a lawful purpose," *id.*, could suggest that he "did not know of the conduct giving rise to the forfeiture." 18 U.S.C. § 983(d)(2)(A)(i) (2018). Even if Claimant were to show a lack of knowledge of any of Kyle's actions which led to the seizure of the asset, an owner under the statute does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another" as is the case here. 18 U.S.C. § 983(d)(6)(B)(i). As a general, unsecured creditor, Claimant is also unable to assert standing under this defense.